IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

JONATHAN ROSADO,

                    Petitioner,

            vs.

MICHAEL CAPRA,[1] Superintendent, Sing
Sing Correctional Facility,

                    Respondent.

No. 9:09-cv-00676-JKS

MEMORANDUM DECISION

Jonathan Rosado, a state prisoner appearing *pro se*, filed a Petition for a Writ of Habeas

Corpus under 28 U.S.C. § 2254.  Rosado is currently in the custody of the New York Department

of Corrections and Community Supervision, incarcerated at Sing Sing Correctional Facility.

Respondent has answered, and Rosado has replied.

## I.  BACKGROUND/PRIOR PROCEEDINGS

In July 2005, following his conviction by two separate juries of Assault in the First

Degree (N.Y. Penal Law §§ 20.00, 120.10[1] ), Criminal Possession of a Weapon in the Second

Degree (N.Y. Penal Law § 265.03[2]), and two counts of Criminal Possession of a Weapon in the

Third Degree (N.Y. Penal Law § 265.03[4]), Rosado was sentenced in the Broome County Court

as a second felony offender to an aggregate prison term of twenty-five years.  The Appellate

Division, Third Department, affirmed Rosado's conviction and sentence in a published decision,

---

[1] Michael Capra, Superintendent, Sing Sing Correctional Facility, is substituted for F.
Napoli, Superintendent, Southport Correctional Facility.  Fed. R. Civ. P. 25(d).

and the New York Court of Appeals denied leave to appeal on November 30, 2007.[2]  On

January 6, 2009, Rosado, appearing *pro se*, filed a *coram nobis* petition in the Appellate

Division, which was summarily denied without opinion or citation to authority on February 24,

2009, and the New York Court of Appeals denied leave to appeal on May 18, 2009.  Rosado

timely filed his Petition for relief in this Court on June 1, 2009.

      As summarized by the Appellate Division, the facts underlying Rosado's conviction:

> [] Those charges stemmed from an incident in May 2004 in which [Rosado]
> waived a gun out the window of a moving vehicle at two women, who flagged down
> police; when the vehicle was stopped, police observed and recovered two loaded
> firearms, a .22 caliber pistol and the .32 caliber revolver which [Rosado]
> had displayed from the car window.  While in custody, [Rosado] gave a statement to
> police admitting the charged conduct, as well as his role in an August 2003 shooting
> for which he was subsequently indicted and tried.  At the second trial, various
> witnesses, including [Rosado's] accomplice, testified that [Rosado] had orchestrated
> an assault on Anthony Tillman in retaliation for Tillman having previously shot
> [Rosado].[3]

## II.  GROUNDS RAISED/DEFENSES

      In his Petition, Rosado raises four claims:  (1) the trial court denied him his Sixth

Amendment right to conduct his own defense (self-representation); (2) ineffective assistance of

trial counsel; (3) the convictions were obtained by the use of a coerced confession; and (4) the

assault conviction was against the weight of the evidence.  Respondent contends that Rosado's

first (denial of right to self-representation), second (ineffective assistance of trial counsel), and

fourth (assault conviction), claims are unexhausted and procedurally barred; and that his third

(coercion) claim is unexhausted.  In his Traverse Rosado does not address Respondent's failure

---

[2] *People v. Rosado*, 832 N.Y.S.2d 97 (App. Div.), *lv. denied*, 878 N.E.2d 1026 (N.Y. 2007).

[3] *Id.* at 98.

to exhaust defense.  In his Petition, however, Rosado appears to concede the exhaustion issue, but contends it was because appellate counsel was ineffective.  Because prisoner *pro se* pleadings are given the benefit of liberal construction,[4] this Court will treat Rosado's ineffective assistance of appellate counsel argument as a fifth ground and proceed accordingly.[5]

### III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[6]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[7]  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory

---

[4] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Brownell v. Krom*, 446 F.3d 305, 310 (2d Cir. 2006); *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Thompson v. Choinski*, 525 F.3d 205, 209-10 (2d Cir. 2008); *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006).

[5] The Court agrees with Respondent that to the extent that Rosado's grounds were never presented to the state courts on the merits, they are unexhausted.  The failure to exhaust notwithstanding, this Court must nevertheless determine whether that question was meritorious and whether there is a reasonable probability that the result would have been different absent the constitutional error in determining whether appellate counsel was ineffective in failing to raise it. *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986); *Mosby v. Senkowski*, 470 F.3d 515, 519 (2d Cir. 2006).

[6] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 402-06 (2000); *see also Lockyer v. Andrade*, 538 U.S. 63, 70-75 (2003) (explaining this standard).

[7] *Williams*, 529 U.S. at 412 (alteration added).

power of the Supreme Court over federal courts.[8]  Thus, where holdings of the Supreme Court

regarding the issue presented on habeas review are lacking, "it cannot be said that the state court

'unreasonabl[y] appli[ed] clearly established Federal law.'"[9]  When a claim falls under the

"unreasonable application" prong, a state court's application of Supreme Court precedent must

be "objectively unreasonable," not just "incorrect or erroneous."[10]  The Supreme Court has made

clear that the objectively unreasonable standard is "a substantially higher threshold" than simply

believing that the state-court determination was incorrect.[11]  "[A]bsent a specific constitutional

violation, federal habeas corpus review of trial error is limited to whether the error 'so infected

the trial with unfairness as to make the resulting conviction a denial of due process.'"[12]  In a

federal habeas proceeding, the standard under which this Court must assess the prejudicial

impact of constitutional error in a state court criminal trial is whether the error had a substantial

and injurious effect or influence in determining the outcome.[13]  Rosado "bears the burden of

proving by a preponderance of the evidence that his constitutional rights have been violated."[14]

The Supreme Court recently underscored the magnitude of the deference required:

---

[8] *Early v. Packer*, 537 U.S. 3, 10 (2002).

[9] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations in original) (citation omitted); *see also Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (per curiam).

[10] *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003) (internal quotation marks and citations omitted).

[11] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams,* 529 U.S. at 410).

[12] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 642, 643 (1974)).

[13] *Fry v. Pliler*, 551 U.S. 112, 121 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993)).

[14] *Hawkings v. Castello*, 460 F.3d 238, 264 (2d Cir. 2006) (internal quotation marks and citations omitted).

As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin,* 518 U.S. 651, 664, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). *It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.* Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia,* 443 U.S. 307, 332, n.5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.[15]

In applying this standard, this Court reviews the "last reasoned decision" by the state court.[16]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[17]  Although pre-AEDPA precedent established that deference is due to the findings of state appellate courts,[18] the Second Circuit has left the question open with respect to AEDPA cases.[19]  In the absence of a clear indication from the Second Circuit to the contrary, this Court can find no principled reason not to

---

[15] *Harrington v. Richter*, 131 S. Ct. 770, 786-87 (2011) (emphasis added).

[16] *Cf. Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991) (explaining "how federal courts in habeas proceedings are to determine whether an unexplained order . . . rests primarily on federal law," and noting that federal courts must start by examining "the last reasoned opinion on the claim . . . . "); *Jones v. Stinson*, 229 F.3d 112, 118 (2d. Cir. 2000).

[17] 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary . . . ." (citing 28 U.S.C. § 2254(e)(1))).

[18] *Sumner v. Mata*, 449 U.S. 539, 547 (1981); *Ventura v. Meachum*, 957 F.2d 1048, 1055 (2d Cir. 1992).

[19] *See Boyette v. Lefevre*, 246 F.3d 76, 88 n.7 (2d Cir. 2001).

apply the same rule in the context of AEDPA, i.e., findings of a state appellate court are presumed to be correct.

## IV.  DISCUSSION

### A.      Exhaustion

This Court may not consider claims that have not been fairly presented to the state courts.[20]  Unexhausted claims must be dismissed.[21]  The claim must have been presented to the highest state court that may consider the issue presented.[22]  "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of facts that entitle the petitioner to relief."[23]  A mere appeal to a broad constitutional guarantee, e.g., due process, is insufficient to present the substance of a constitutional claim to the state courts.[24]  A petitioner satisfies the fair presentation aspect of the exhaustion requirement by presenting the essential factual and legal premises of his federal constitutional claim to the appropriate state courts.[25]  An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings,

---

[20] 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases).

[21] *See Rhines v. Weber*, 544 U.S. 269, 275-78 (2005); *Engle v. Issac*, 456 U.S. 107, 125 n.28 (1982); *Rose v. Lundy*, 455 U.S. 509, 510 (1982).

[22] *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[23] *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard v. Connor*, 404 U.S. 270 (1971)).

[24] *See id.* at 163; *Anderson v. Harless*, 459 U.S. 4, 7 (1982).

[25] *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009) (citing *Reese*, 541 U.S. at 30-34); *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005).

irrespective of the label used.[26]  Exhaustion does not require that Rosado have cited the "book and verse on the federal constitution."[27]  A petitioner who does not cite the "book and verse of the Constitution" may nonetheless "fairly present to the state courts the constitutional nature of his claim" through:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.[28]

In New York, to invoke one complete round of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal.[29]  Claims are fairly presented to the New York Court of Appeals when the application for leave to appeal clearly states that all claims in the attached brief are being pressed, or no arguments are made in detail and the application simply requests review of all issues outlined in the brief.[30]  Where the application for leave to appeal refers to specific claims raised before the Appellate Division but

---

[26] *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005).

[27] *Picard v. Connor*, 404 U.S. 270, 278 (1971).

[28] *Daye v. Atty Gen. of State of N.Y.*, 696 F.2d 186, 194 (2d Cir. 1982) (en banc).

[29] *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).

[30] *Jordan v. Lefevre*, 206 F.3d 196, 199 (2d Cir. 2000); *see Morgan v. Bennett*, 204 F.3d 360, 369-71 (2d Cir. 2000) (the application for leave to appeal did not specify any particular issue for review, but enclosed the briefs filed in the Appellate Division and requested the Court of Appeals to consider and review all issues raised in the appellant's brief and *pro se* supplemental brief).

omits mention of others, the unmentioned claims are deemed abandoned.[31]  Where the application for leave to appeal argues one or more specific claims but only makes a passing reference to possible other claims found in the attached briefs, the claims mentioned in passing have not been fairly presented to the Court of Appeals.[32]

Even if a federal claim has not been properly presented to the highest state court or preserved under state law, it will be deemed exhausted if it has become procedurally barred under state law.[33]

> In the case of procedural default (including where an unexhausted claim no longer can proceed in state court), we may reach the merits of the claim "only if the defendant can first demonstrate either cause and actual prejudice, or that he is actually innocent."[34]

However, the Court need not rely on this basis as it may deny the petition on the merits notwithstanding the lack of exhaustion of state-court remedies,[35] particularly where the ground raised is plainly meritless.[36]

In his petition for a writ of error *coram nobis* in the Appellate Division, Rosado challenged the effectiveness of his appellate counsel in failing to raise on appeal his first (denial of right of self-representation) and second (ineffective trial counsel) grounds.  In his application

---

[31] *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991).

[32] *Jordan*, 206 F.3d at 198.

[33] *See Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201-02 (2d Cir. 2010).

[34] *St. Helens* v. *Senkowski*, 374 F.3d 181, 184 (2d Cir. 2004) (quoting *Bousley v. United States*, 523 U.S. 614, 622 (1998)).

[35] 28 U.S.C. § 2254(b)(2).

[36] *See Rhines v. Weber*, 544 U.S. 269, 277 (2005).

for leave to appeal to the New York Court of Appeals Rosado included only the failure of his appellate counsel to raise the claim that he had been improperly denied his right of self-representation.  Rosado did not raise his third ground (use of a coerced confession) on either direct appeal or in his *coram nobis* petition.  Thus, because they have not been presented to the highest state court in any form, Rosado's second (ineffective assistance of trial counsel) and third (use of a coerced confession) grounds have not been properly exhausted.  Accordingly, this Court is not only precluded from considering them on the merits, it is also precluded from considering Rosado's ineffective assistance of appellate counsel claim based upon the failure to raise those issues.  Rosado is not entitled to relief under his second and third grounds.

**B.      Merits**

Ground 1:  Denial of Right to Self-Representation (Sixth Amendment Violation)

Rosado contends that the trial court improperly denied his request that he be permitted to fire his trial counsel and proceed to defend himself *pro se*.  Respondent contends that because Rosado did not raise the denial of his right to self-representation on direct appeal, he has failed to properly exhaust his state-court remedies.  Although this Court agrees that Rosado did not raise the question on direct appeal, he did exhaust his claim that his appellate counsel was ineffective for failing to raise the claim.  Thus, as noted above, in order for this Court to determine whether his appellate counsel was ineffective for failing to present his Sixth Amendment claim on direct appeal, this Court must assess the validity of the underlying claim.[37]

---

[37] Respondent's reliance on *Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001), as holding to the contrary is misplaced.  *Turner* is not only *dicta*, but directly contrary to the holding in *Morrison*, 477 U.S. at 365, and the later holding of the Second Circuit in *Mosby*, 470 F.3d at 519.

Neither the Appellate Division nor the New York Court of Appeals provided any reasoning for rejecting Rosado's claim. A state court is not required to give reasons before its decision can be deemed to be "adjudicated on the merits."[38] When there is no reasoned state court decision denying an issue presented to the state courts "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[39] "The presumption may be overcome when there is reason to think that some other explanation for the state court's decision is more likely."[40]

Where there is no reasoned decision of the state court addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it.[41] In so doing the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds.[42] This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court.[43]

---

[38] *Richter*, 131 S. Ct. at 785.

[39] *Id*. at 784-85.

[40] *Id.* at 785.

[41] *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a *de novo* standard to a federal claim not reached by the state court).

[42] *See Harris v. Reed*, 489 U.S. 255, 263 (1989); *Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Correctional Svcs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same).

[43] *Richter*, 131 S. Ct. at 784-85 (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46.

The record reflects that Rosado first broached the subject of replacing counsel at a pre-

trial hearing preceding the first trial on December 3, 2004.

>THE DEFENDANT:  Excuse me, can I say something?
>THE COURT:  Oh, sure.
>THE DEFENDANT:  Can I get more time?  I am getting another lawyer.
>THE COURT:  Well, you have a right to hire an attorney any time you want,
>Mr. Rosado.  Mr. Scanlon has been assigned, yes?
>MR. SCANLON:  Yes, sir.
>THE COURT:  Here is where we are: You can, as I said, you can retain an
>attorney any time you want.  We are going to schedule this for trial and it's going to
>go to trial on that date whether you have a new attorney or not. So, any
>THE DEFENDANT:  Okay.
>THE COURT:  (Continuing) -- any attorney that you retain, if that happens
>is going to have to be able to try the case on that date or he is not going to be
>handling the case. The reason for that is simple. If a defendant were to have the right
>to say, Judge, I'm getting a new attorney, and now you have to keep postponing the
>trial. You could keep getting  new attorneys and we would never try the case.  You
>were arraigned on this indictment June 16th, almost six months ago. So, you have
>had plenty of time, if you wanted to hire an attorney, to do so. So, I will not -- I will
>permit it but it's conditioned, it will be conditioned upon this attorney, whoever it is
>being able to go to trial on the date that I give.[44]

Thereafter, the first matter went to trial, in which Rosado was convicted.  On

February 14, 2005, at a pre-trial conference in the second matter the following occurred.

>THE DEFENDANT:  Can I say something?
>THE COURT:  Certainly.
>THE DEFENDANT:  Can I fire my lawyer please?
>THE COURT:  No.
>THE DEFENDANT:  Can I represent myself because that's what I'm doing
>anyway?  I mean, all he does, he doesn't do anything for me, he didn't put my
>motions in, you have to scream at him because he didn't put no motions.
>THE COURT:  I've got them right here.
>THE DEFENDANT:  You had to scream to him for five or ten minutes
>straight.  First of all, he barely comes there to see me, all he does is talk about I
>highly recommend that you take this offer. Come on.
>THE COURT:  That's his advice?

---

[44] Docket No. 13-12 at 16-18.

THE DEFENDANT: His advice?  There's so much stuff in this case that has to be looked at that has to be looked at.  He hasn't asked me about nothing, nothing.  He don't come up there to talk to me about the case.

THE COURT: Mr. Rosado, you're entitled to assigned counsel.  Mr. Scanlon represents defendants in this court on a regular basis.  He's done so for many years.  He's competent counsel and he will be preparing this case for trial.  You had substantial exposure, have substantial exposure, given the there's multiple indictments, two indictments pending against you.  You went to trial in the last indictment, you were convicted.  This offer that's been made by the People would satisfy in effect both cases.  You don't want it, that's not a problem.  Mr. Scanlon will prepare this case for trial and it will be scheduled accordingly.  I'm telling you right now work with Mr. Scanlon and he will be doing whatever needs to be done to prepare this charge for trial.

THE DEFENDANT: How come I can't go pro se?

THE COURT: The problem with going pro se, you're entitled, any defendant is entitled to represent himself.  The problem with that is you are not familiar with the statutes, the laws of the State of New York.  You're not familiar with the rules of evidence.  You don't know how to pick a jury, so to speak, in the first place.  Representing yourself would be a very, very bad mistake on your part and I would strongly recommend you not do it because why, you don't know how to do it.  That's like saying bad analogy, but that's like saying to a doctor why don't you operate on yourself, you're a brain surgeon, take care of yourself, he can't, he goes to another doctor.

THE DEFENDANT: But I know about what's going on in this case and I know how to ask questions.

THE COURT:  What you can do is questions you want asked when the appropriate time comes, whether it's during jury selection or during the actual conduct of the trial when the witnesses are on the stand, you write those questions out and there will be no doubt about it, Mr. Scanlon will ask those questions of the witnesses.

THE DEFENDANT: I did that.  He didn't ask the questions.

THE COURT:  I'm telling you he will do that.  That's assuming that the questions that you want to ask are legal or admissible questions, competent questions.  You can't ask any question of any witness you want.  It has to be a proper question.  It has to be relevant, had has to be properly phrased.  You don't know how to phrase questions, you don't know the rules of evidence as I pointed out but if you have a point that you want to be brought out through a witness and you want a witness to be asked about a particular event or a fact or a time, Mr. Scanlon will phrase that correctly and he'll ask it for you and during the course of the trial, if there is a problem and you want something asked, you can raise your hand and you and I and your attorney will talk up here privately outside the presence of the jury and we will make certain that it's covered, if it's legal to have it covered.  Do you understand what I'm saying?

THE DEFENDANT:  Yes.

12

THE COURT:  All right, You'll get a trial notice.[45]

The next point at which Rosado raised the issue of the quality of counsel's representation

was on May 31, 2005, the first day of the second trial.

THE COURT:  Noted.  What's up?

THE DEFENDANT:  I told you before I'm not very comfortable with this lawyer right here.  I feel like he's working more against me than with me, and he's proved it many times.

Plus this is my life right here. I'm facing attempted murders.  Doesn't come see me or nothing or talk to me about no cases on.  I've been in the jail a year.  He came to see me seven or eight times.  I've got a list of people I want to subpoena to trial.

THE COURT:  And he's going to be taking that for you with his investigator.  If your request is for an adjournment and new trial, it's denied.

THE DEFENDANT:  What I'm saying is today -- I haven't been able to give him my list of names until today.

THE COURT:  Well, I've had a conference with your attorney and the prosecutor moments ago and he indicated that at his most recent conversation with him you gave him this list of witnesses.  He also indicates he's given you all of the paperwork he's received from the original -- from the time this case was originally filed up to date, including lead sheets, et cetera.

Is that true, he's given you these records?

THE DEFENDANT:  Yes.

THE COURT:  And you've had these records since then; in fact, right after you were arrested.

Here is what you are going to do.  Continue to work with Mr. Scanlon.  He's going to represent you.  I've already indicated if he needs an additional investigator assigned to assist him in locating these witnesses, that's not a problem.

THE DEFENDANT:  You are going to make sure these witnesses come?

THE COURT:  You have to find them and serve them first.  Nonetheless, we're going to go ahead and pick a jury today.  You can step back.

Do you have a list of witnesses?

MR. SCANLON:  No, sir.  I just received it today.  I can give it to the Court in just a moment.

THE COURT:  Very well. Thank you.[46]

---

[45] Docket No. 13-14 at 54-58.

[46] Docket No. 13-14 at 205-07.

Rosado does not identify any other point at which he broached the subject of self-representation, and this Court's review of the record does not reveal that Rosado made any other request.

Because it is the criminal defendant who personally bears the consequences of conviction, he or she has an independent constitutional right of self-representation under the Sixth Amendment.[47]  A criminal defendant may proceed to defend himself or herself without counsel when he or she voluntarily and intelligently elects to do so.[48]  The competency standard for waiving the right to counsel is the same as the competency standard for standing trial:  whether the defendant has sufficient present *ability* to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings.[49]  The Supreme Court has made clear that the *ability* to represent oneself, i.e., "technical legal knowledge," has no bearing on a defendant's competence to choose self-representation.[50]  Thus, a defendant has the right to proceed without the assistance of counsel, "provided only that he knowingly and intelligently [waives] his right to counsel and that he is able and willing to abide by [the] rules of procedure and courtroom protocol."[51]

Second Circuit case law makes clear that a defendant who elects to forego the assistance of counsel "must make a timely and unequivocal request" to the trial court to proceed *pro se*.[52]  If

---

[47] *Faretta v. California*, 422 U.S. 806, 819-20 (1975).

[48] *Id.* at 834-35; *see Johnson v. Zerbst*, 304 U.S. 458, 465-68 (1938) (holding that an accused must "competently and intelligently" waive the right to counsel).

[49] *Godinez v. Moran*, 509 U.S. 389, 396, 399 (1993).

[50] *Id.* at 399-400 (citing *Faretta*, 422 U.S. at 836).

[51] *McKaskle v. Wiggins*, 465 U.S. 168, 173 (1984).

[52] *Williams v. Bartlett*, 44 F.3d 95, 100-01 (2d Cir. 1994).

"a defendant's request to proceed *pro se* is informed, voluntary and unequivocal, '[t]he right of a defendant to act as his own lawyer is *unqualified* if invoked prior to the start of trial.'"[53]   On the other hand, "[d]istinct considerations bear upon requests made after trial has begun."[54]

> After trial has begun, a trial court faced with such an application must balance the legitimate interests of the defendant in self-representation against the potential disruption of the proceedings already in progress.  In exercising this discretion, the appropriate criteria for a trial judge to consider are the defendant's reasons for the self-representation request, the quality of counsel representing the party, and the party's prior proclivity to substitute counsel.[55]

The December 3, 2004, request was clearly not an unequivocal request that Rosado be permitted to represent himself.  The February 14, 2005, request does not present as clear a picture.  Although it appears that at the beginning of the colloquy Rosado unequivocally requested that he be allowed to proceed *pro se*, the colloquy as a whole does not.  *Faretta-Moran- McKaskle* require that prior to permitting an accused to discharge counsel and appear *pro se*, the accused must be advised of the consequences of  waiving the right to counsel and proceeding *pro se*.  The trial court did advise Rosado of the consequences, including the pitfalls and dangers involved in self-representation.  At the conclusion of the trial court's advisement, Rosado merely acknowledged that he understood the consequences of his self-representation, but never indicated at that point that he nevertheless wished to represent himself.  Rosado's actions at the conclusion of the advisement were certainly not unequivocal.[56]  The next point at which

---

[53] *Id.* (quoting *United States ex rel. Maldonado v. Denno*, 348 F.2d 12, 15 (2d Cir. 1965)).

[54] *Id.*

[55] *Id.* at n.1 (citations omitted).

[56] Rosado's argument that the trial court didn't give a reasonable time frame within which to make a choice or advise him that, notwithstanding the fact he was not schooled in the law he

(continued...)

15

Rosado raised the issue, on May 31, 2005, the first day of trial, simply reveals a continued dissatisfaction with the representation he was receiving, but was not an unequivocal request that he be permitted to represent himself.

The failure of appellate counsel to raise meritless or weak issues does not constitute ineffective assistance of counsel.[57]  Applying that rule, this Court cannot say that in rejecting Rosado's ineffective assistance of counsel claim, the state courts erred in determining that Rosado's claim that the trial court violated his Sixth Amendment right to represent himself did not have sufficient merit such that the failure of his appellate counsel to raise it on appeal constituted ineffective assistance of counsel.  Based upon the record before it, this Court cannot say that the assumed decisions of the Appellate Division and New York Court of Appeals were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state courts rendered their decisions or were "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[58]  Rosado is not entitled to relief under his first ground.

---

[56](...continued)
could still waive counsel, is not well taken.  The advisement given by the trial judge conveyed the message that the court thought self-representation was unwise but does not suggest that Rosado was precluded from appearing *pro se*.  At its conclusion, Rosado did not indicate that he wished more time to consider the matter of self-representation.  Moreover, when the subject of his dissatisfaction with his counsel was again raised at the commencement of the second trial, Rosado did not make an express or implied request that he be permitted to proceed *pro se*.

[57] *See Jones v. Barnes*, 463 U.S. 745, 751-52 (1983) (holding that appellate counsel does not have an obligation to raise every nonfrivolous argument); *Aparicio v. Artuz*, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective assistance of counsel to fail to raise meritless claims).

[58] 28 U.S.C. § 2254(d); *see Williams*, 529 U.S. at 404-06; *see also Andrade,* 538 U.S. at 70-75 (explaining this standard).

Ground 4:  Assault Conviction

Rosado contends that his conviction for first-degree assault was unsupported by the weight of the evidence.  Specifically, Rosado points to numerous instances that he contends show that the evidence was either internally conflicting or contradictory.  Respondent contends that the weight-of-the-evidence test is a matter of state law, beyond the purview of this Court in a federal habeas proceeding.

Under New York law, the Appellate Division employs two standards of review—legal sufficiency and weight of the evidence.[59]  Although related, each requires a discrete analysis. Under the legal-sufficiency standard, the Appellate Division must determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[60]  Under the weight-of-the-evidence standard, the court must examine the evidence further.  If, based upon all the credible evidence, a different finding would not have been unreasonable, the Appellate Division must, giving deference to the jury on credibility, weigh the relative probative force of the conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony.[61]  In determining the weight of the evidence, the Appellate Division determines credibility issues; it must assess the evidence in light of the elements of the crime as

---

[59] N.Y. Crim. Proc. Law § 470.15[4][b], [5].

[60] *People v. Santi*, 818 N.E.2d 1146, 1153 (N.Y. 2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[61] *People v. Bleakley*, 508 N.E.2d 672, 674-75 (N.Y. 1987).

charged to the jury.[62]  That is, the Appellate Division "must consider the elements of the crime,

for even if the prosecution's witnesses were credible their testimony must prove the elements of

the crime beyond a reasonable doubt."[63]  A verdict that satisfies the legally sufficient test may

nevertheless be against the weight of the evidence.[64]

A "weight of the evidence" argument is purely a state law claim grounded in the criminal

procedure statute, whereas a legal sufficiency claim is based on federal due process principles.

Since a "weight of the evidence claim" is purely a matter of state law, it is not cognizable on

habeas review.  In making a "weight of the evidence" argument, Rosado has not asserted a

federal claim; instead, he has raised an error of state law, for which habeas review is not

available.[65]  Even if this Court were to treat Rosado's fourth ground as a fully exhausted federal

sufficiency-of-the-evidence claim, Rosado would not prevail.

The Appellate Division rejected Rosado's weight-of-the-evidence argument:

> Turning to [Rosado's] contention addressed to his second trial, that the
> conviction of assault in the first degree was not supported by the weight of
> credible evidence, we have independently reviewed the conflicting testimony and
> evidence in a neutral light and are not persuaded to disturb the jury's credibility
> determinations or verdict.  [Rosado's] conviction was predicated on the testimony
> of several witnesses, as well as his confession, all establishing that he orchestrated
> and ordered the retaliatory assault on Tillman.  Although Tillman and the actual
> shooter, who was separately tried, did not testify, [Rosado's] female accomplice
> testified to following [Rosado's] plan whereby she met up with Tillman and they
> were driven to a parking lot; she kept [Rosado] informed via cell phone, enabling
> another accomplice—the shooter—to approach the parked vehicle and shoot
> Tillman.

---

[62] *People v. Johnson*, 890 N.E.2d 877, 879 (N.Y. 2008).

[63] *People v. Danielson*, 880 N.E.2d 1, 5 (N.Y. 2007).

[64] *Id*.

[65] *Brown v. Gouverneur Corr. Facility*, 408 F. Supp. 2d 175, 183-84 (W.D.N.Y. 2006).

Neither the accomplice's substantial delay in identifying the shooter and admitting her own role in the assault (which she ultimately revealed to police in May 2004), nor the fact that she testified in exchange for a favorable disposition of the serious charges against her, all of which were highlighted to the jury, rendered her testimony unworthy of belief or incredible.  Indeed, her account was consistent with and corroborated by other witness accounts and [Rosado's] own signed confession to police which was admitted at trial.  [Rosado's] trial testimony, in which he tried to disavow his confession and denied any role in this attack, was implausible, inconsistent and not particularly worthy of belief. In light of the conflicting testimony, although a different finding might not have been unreasonable, we discern no grounds upon which to disturb the jury's resolution of credibility determinations and do not find that the jury failed to give the evidence the weight it deserved.[66]

Under *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[67]  This Court must, therefore, determine whether the decision of the Appellate Division constituted an unreasonable application of *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.[68]  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."[69]

---

[66] *Rosado*, 832 N.Y.S.2d at 98-99 (citations omitted).

[67] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 130 S. Ct. 665, 673 (2010) (reaffirming this standard).

[68] *Jackson*, 443 U.S. at 318-19.

[69] *Id.* at 326; *see McDaniel*, 130 S. Ct. at 673-74.

19

Rosado's argument misperceives the role of a federal court in a habeas proceeding challenging a state-court conviction.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[70]  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must undertake its inquiry by reference to the elements of the crime as set forth in state law.[71]  Unlike the Appellate Division applying the New York "weight-of-the-evidence" test, this Court is precluded from either re-weighing the evidence or assessing the credibility of witnesses.  Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain a conviction of the crime as prescribed by state law.[72]

In this case, the Appellate Division, a state court, found that there was sufficient evidence of each element of the crime to support the conviction under state law.  Although it might have been possible to draw a different inference from the evidence, this Court is required to resolve that conflict in favor of the prosecution.[73]  Rosado bears the burden of establishing by clear and convincing evidence that these factual findings were erroneous;[74] a burden Rosado has failed to carry.  The record does not compel the conclusion that no rational trier of fact could have found proof of guilt, especially considering the double deference owed under *Jackson* and AEDPA.  Rosado is not entitled to relief under his fourth ground.

---

[70] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[71] *Jackson*, 443 U.S. at 324 n.16.

[72] *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

[73] *See Jackson*, 443 U.S. at 326.

[74] 28 U.S.C. § 2254(e)(1).

## V.  CONCLUSION AND ORDER

Rosado is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.[75]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.[76]

The Clerk of the Court is to enter judgment accordingly.

Dated:  September 13, 2012.

/s/ James K. Singleton, Jr.

JAMES K. SINGLETON, JR.
United States District Judge

---

[75] 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003))).

[76] *See* Fed. R. App. P. 22(b); Second Circuit R. 22.1.

21